CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 3 1 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DON JUAN TORRES, | ) | |
| Plaintiff, | ) | Civil Action No. 7:07cv00398 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GENE JOHNSON, <u>et</u> <u>al.</u> | ) | By: Hon. Glen E. Conrad |
| Defendants. | ) | United States District Judge |

Plaintiff, Don Juan Torres[1], a Virginia inmate proceeding pro se, filed this civil rights action

under 42 U.S.C. § 1983. Having reviewed the complaint, the court concludes that plaintiff has failed

to state a claim upon which relief may be granted. Therefore, the court will dismiss his complaint

pursuant to 28 U.S.C. § 1915A(b)(1).[2]

## I. Factual and Procedural Summary

The plaintiff is incarcerated at ROSP. The relevant facts are recapitulated in the Warden's

June 15, 2007, Level I response to plaintiff's grievance, which stated, in pertinent part:

> **Grievance Summary:** You stated Property Department refused to allow you to
> purchase photos when you submitted a property request form to them on May 1,
> 2007. You wanted to purchase 4["] x 6 ["] commercial photos from a vendor,
> however your request was denied. Disapproval of your order without even viewing
> the material violates your First Amendment rights.
>
> * * *
>
> **Investation:** The Property Department did not approve your order for four 4["] x
> 6["] commercial photos of nude women because material of this nature violates

---

[1] "Don Juan Torres" is also known as "D. Hautz." Plaintiff had his name legally changed to Don Juan Torres; however, Red Onion State Prison ("ROSP") documents, such as plaintiff's grievance documentation, indicate the name D. Hautz because that is the name under which plaintiff was incarcerated at ROSP. The same inmate number, 340315, is attached to both names.

[2] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

policy. Operating Procedure 803.1 (B-7) states that sexually explicit material, nude or semi-nude pictures, commercially distributed or personal photographs that by the nature of content pose a threat to personal or institution safety and security in violation of policy are prohibited. Commercial photos have value and could be used for barter which is prohibited. The material itself did not have to be viewed to determine that it would violate policy as your order clearly states that you are requesting to order nude commercial photos. It would not be feasible to order material knowing that it would be disapproved when it arrived.

**Policy/Procedure:** Operating Procedure 803.1 (B-7) governs this issue.

In accordance with the above information, this grievance is considered to be **UNFOUNDED**, as procedures have been correctly applied. . . .

Plaintiff appealed the Warden's decision to the Regional Director, whose Level II response, dated July 1, 2007, stated, in pertinent part:

Your grievance appeal has been reviewed along with the Level I response and your original complaint. Your grievance regarding the decision of Red Onion State Prison to deny your request to order . . . commercial photos of nude women has been investigated. Investigation revealed that the order was deemed a threat to security and was denied in accordance with policy. Operating Procedure 803.1 and security concerns govern this issue.

Based on the information provided, I am upholding the decision of the Level I respondent, which has determined that your grievance is unfounded.

Level II is the last level of appeal for this grievance.

Thereafter, plaintiff timely filed the instant complaint. The court will introduce additional facts as necessary in its discussion.

## II. Discussion

The crux of plaintiff's complaint is that his request to order 4" x 6" "commercially distributed photographs of nude women" was improperly denied "without even viewing the material to see if the photographs violated Specific Criteria for Publication Disapproval per [Division Operating Procedure ("DOP")] 852." In plaintiff's view, this violated his First Amendment and due process

2

rights. He adds that "[n]o where [sic] in DOP 803.1 does it read or state" that "commercially distributed photographs are prohibited." He concedes that "DOP 803.1 IV B.7 does state the following[:] 'Commercially distributed or personal photographs or other printed material that by the nature of content poses a threat to personal or facility safety and security, or meet the Specific Criteria for Publication Disapproval in DOP 852 (Incoming Publications) are prohibited.'" He asserts that it is nonetheless "clear and unambiguous that commercial photographs are permitted, so long as they do not by nature of content pose a threat to personal or facility safety or meet the Specific Criteria for Publication Disapproval."

As a prison inmate, the plaintiff retains certain First Amendment rights, including the right to receive written publications. Thornburgh v. Abbott, 490 U.S. 401, 407-408 (1989). However, an inmate's constitutional rights are not unrestricted. Prisons may adopt regulations that infringe upon an inmate's constitutional rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 87 (1987). In order to determine whether the regulation relied on by the defendants is constitutionally permissible, the court must consider four factors: (1) whether the disputed regulation is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, prison officials, and the allocation of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. Turner, 482 U.S. at 89-90. When applying these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). The plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993).

3

Plaintiff's submissions include the relevant Virginia Department of Corrections ("VDOC")

Division Operating Procedures. Paragraph 7 of DOP 803.1, "OFFENDER CORRESPONDENCE,"

Section IV, titled "Procedures,"[3] Subsection B, subtitled "Incoming," lays out the process for

handling VDOC inmates' incoming mail at issue in the instant case:

> Nude or semi-nude personal pictures or photographs, including persons in underwear, are prohibited. Commercially distributed or personal photographs or other printed materials that by the nature of content poses a threat to personal or facility safety and security, or meet the Specific Criteria for Publication Disapproval in DOP #852 (Incoming Publications) . . . are prohibited. . . .

Plaintiff's submissions also include DOP 852, which, as indicated in the preceding paragraph,

is clearly incorporated by reference into DOP 803.1. DOP 852-4.0, "Discussion," states that

"[i]nmates should be allowed to subscribe to, order and receive publications direct from a legitimate

source so long as they do not pose a threat to the security, discipline, and good order of the

facility . . . ." DOP 852-7.0, "Inmate Publication Privileges," paragraph 1, states that "[i]t is the

policy of the Department of Corrections to permit inmates to subscribe to, order, and receive

publications direct from a legitimate mail order source so long as they do not pose a threat to the

security, discipline and good order of the facility. . . ." Paragraph 10 states that "[t]he inmate has the

right to appeal a publication disapproval through the established Inmate Grievance Procedure." DOP

852-7.8, "Specific Criteria for Publication Disapproval," states that "[t]he Warden/Superintendent,

or his/her designee, should disapprove a publication for receipt and possession by inmates . . . if the

publication can be reasonably documented to contain" specific criteria, such as that laid out in DOP

852-7.8(8), prohibiting "[m]aterial which promotes, advocates or instructs in the commission of

---

[3] The Level I grievance respondent, the Warden of ROSP, cited DOP 803.1 (B-7), leaving out the Roman numeral identifying section "IV. Procedures" of DOP 803.1.

4

criminal activity and or the violation of state or federal laws and/or the violation of the Code of Inmate Offenses. . . ." Additionally, DOP 852-7.8(12) prohibits "[m]aterial whose content could be detrimental to the security, good order or discipline of the institution, and/or inmate rehabilitative efforts, and/or the safety or health of inmates, staff or others."

Applying the Turner factors to this case, the court concludes that DOP 803.1, and the attendant sections of DOP 852, which are incorporated by reference, are "reasonably related to legitimate penological interests." Turner, 482 U.S. at 87. First, there is a logical connection between the regulations and the legitimate governmental interests underlying the regulation. The VDOC has a legitimate interest in maintaining security, discipline, and order in its prisons. See Hodges v. Virginia, 871 F. Supp. 873, 876 (W.D. Va. 1994), rev'd on other grounds, Montcalm Publ. Corp. v. Beck, 80 F.3d 105 (4th Cir. 1996) ("The interests articulated by the VDOC, security, discipline, order public safety, and rehabilitation, need no defense."). As the Warden specified in his Level I response to plaintiff's grievance in this matter, the photographs plaintiff requested "by the nature of content pose a threat to personal or institution safety and security in violation of policy" because such "[c]ommercial photos have value and could be used for barter which is prohibited." Penological interests are negatively impacted by sexually explicit publications that promote the commission of criminal activity, such as the bartering of photographs. Id. Second, plaintiff has alternative means of exercising his right to receive publications, since the DOPs at issue permit a broad range of publications to be received and read.[4] See Thornburgh, 490 U.S. at 418. Considering the third factor, the photographs, if permitted, would potentially invite disruptive conduct, such as the aforementioned barter. Id. at 413. The regulation is not an "exaggerated response" to prison

---

[4] Plaintiff acknowledges that inmates are permitted to receive subscriptions to magazines that feature photographs of nude women.

concerns. Id. at 418. Therefore, the court concludes that DOP 803.1, and the additional DOPs incorporated by reference therein, as applied to prohibit the plaintiff's possession of the 4" x 6" commercial photographs of nude women, is constitutional. Respecting "the determinations of prison officials," United States v. Stotts, 925 F.2d at 86, the court finds that the DOPs at issue here are "reasonably related to legitimate penological interests," Turner v. Safley, 482 U.S. at 87. Accordingly, the plaintiff's First Amendment claim must be dismissed.

As for plaintiff's due process claim, it is clear from the plaintiff's submissions to the court that he received appropriate notice and a reasonable opportunity to challenge the decision to deny his request to purchase the photographs. See Hopkins v. Collins, 548 F.2d 503 (4th Cir. 1977). Accordingly, the plaintiff's due process claim must be dismissed.

### III. Conclusion

For the reasons stated, the court will dismiss the plaintiff's complaint pursuant to 28 U.S.C. § 1915A(b)(1). An appropriate order will be entered this day. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to plaintiff.[5]


ENTER: This _31st_ day of August, 2007.

_(signature)_
_____
United States District Judge

---

[5] Federal law provides that a prisoner may not bring a civil action without complete prepayment of the appropriate filing fee if the prisoner has brought, on three or more occasions, an action or appeal in a federal court that was dismissed as frivolous, as malicious, or for failure to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical injury. See 28 U.S.C. §1915(g). Plaintiff has had two cases dismissed for failure to state a claim upon which relief may be granted. See Civil Action No. 7:06-cv-00576 (W.D. Va. September 29, 2007), and United States Court of Appeals for the Fourth Circuit Case No. 06-7770 (January 22, 2007). Plaintiff is hereby advised that this dismissal constitutes his third "strike" under §1915(g).

6